815 P.2d 631

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ernie DELGADO, Defendant–Appellant.**

**No. 12266.**

Court of Appeals of New Mexico.

May 23, 1991.

Certiorari Denied July 8, 1991.

---

Tom Udall, Atty. Gen., Margaret Mc-Lean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Lorenzo Tapia, Miguel P. Campos, Law Offices of Tapia & Campos, Albuquerque, for defendant-appellant.

## OPINION

HARTZ, Judge.

Defendant appeals from convictions of two counts of criminal sexual penetration of a minor under thirteen (CSPM) and one count of contributing to the delinquency of a minor (CDM). Defendant contends that (1) the CSPM statute is void for vagueness; (2) the trial court erred in withholding a photograph from the jury and in ruling

that his own testimony authenticating the photograph would constitute a waiver of his right against self-incrimination; (3) the trial court erred in permitting testimony by John Halverson about defendant's alleged misconduct subsequent to the date of the charges for which he was convicted; (4) the trial court should have instructed on alibi; (5) the CDM conviction should be set aside because CDM is a lesser included offense of CSPM; (6) he received ineffective assistance of counsel; (7) the trial court's improper remarks and the prosecutor's misconduct denied him a fair trial; (8) he was improperly denied court appointment of a psychologist to conduct an independent evaluation for use at sentencing; (9) the verdict was not supported by sufficient evidence; and (10) the record is impermissibly defective. We affirm.

## 1. VAGUENESS

Criminal sexual penetration (CSP) is defined as:

> the unlawful and intentional causing of a person, other than one's spouse, to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse, or the causing of penetration, to any extent and with any object, of the genital or anal openings of another, whether or not there is any emission.

NMSA 1978, § 30–9–11 (Cum.Supp.1990). The jury was instructed in accordance with the Uniform Jury Instruction that defines fellatio as "the touching of the penis with the lips or tongue." SCRA 1986, 14–982. Defendant's vagueness claim is that there is ambiguity in the statute as to (1) whether the fellatio must involve the defendant's penis and (2) whether penetration is required.

■ We find no ambiguity in the statute with respect to the required role of the defendant. The acts of sexual intercourse, cunnilingus, fellatio, and anal intercourse all require two persons. CSP is perpetrated whenever a person unlawfully and intentionally causes another person to engage in any of those acts. The natural reading of that language is that a person engages in one of the four listed acts if that person is one of the two persons required for the performance of the act. Nothing in the statute suggests otherwise. On the contrary, the genderless language used in the statute makes clear that the defendant can be either male or female. *See Model Penal Code and Commentaries*, § 213.1 comment 8, at 335 n. 169 (1980). Thus, the offense need not involve the defendant's penis. Also, the second portion of the statutory definition of CSP, which forbids "causing of penetration," indicates that the legislature made a considered judgment that it was not just the person causing penetration who could be held culpable under the first portion of the definition. Furthermore, we can discern no reason why the statute should be interpreted to encompass fellatio only when the defendant's penis is involved. In short, we find no ambiguity in this respect because defendant's proposed alternative construction of the statute is not a reasonable one.

■ As for whether fellatio requires penetration, the Uniform Jury Instruction defining fellatio is an authoritative construction promulgated by the New Mexico Supreme Court. The definition of fellatio in the instruction does not contain a requirement of penetration. Moreover, the supreme court has held that, despite the heading "Criminal sexual penetration" for Section 30–9–11, the offense does not require penetration. *See State v. Orona*, 97 N.M. 232, 638 P.2d 1077 (1982) (cunnilingus). Our conclusion is not undermined by defendant's observation that fellatio without penetration is encompassed by the definition of criminal sexual contact in NMSA 1978, Section 30–9–12 (Repl.Pamp.1984). Because Section 30–9–11 deals explicitly with fellatio, it is the more specific statute and therefore governs such conduct. *See State v. Riley*, 82 N.M. 235, 478 P.2d 563 (Ct.App.1970).

## 2. ADMISSIBILITY OF PHOTOGRAPH

### a. *Sufficiency of Authentication*

■ The victim testified that he could date the alleged offenses for which defendant was convicted because they occurred when defendant gave him a jacket around

Christmas of 1985. Defendant's Exhibit A is a Polaroid photograph of the victim sitting inside on a couch, wearing a short-sleeved shirt. The victim is looking at a jacket lying on the couch to his right. Under his left arm is a white box. Defendant's theory was that the photograph shows the victim just after removing the jacket from a gift box and the photograph was taken with a Polaroid camera given to the victim on his thirteenth birthday in March 1986. If so, the photograph would be useful both to reduce the seriousness of the felony (the penalty for CSP is reduced once the child victim reaches thirteen, § 30–9–11(A)(1)) and to impeach prosecution witnesses.

The court conditionally admitted the exhibit into evidence and permitted defense counsel to use it to cross-examine the victim and the victim's mother. The victim acknowledged that the jacket in the photograph was the one given him by the defendant, that the box on his left could have been the box in which the jacket came, and that he received a Polaroid camera for his thirteenth birthday. Defendant's cross-examination of the victim and his mother failed, however, to elicit the date on which the photograph was taken.

At the conclusion of the state's case-in-chief the state moved to have the exhibit "removed from evidence on the grounds that the picture is not self explanatory" and that a proper foundation had not been established for its admission. The trial court ruled that the exhibit would not go to the jury "unless someone can take the stand and testify that they were either there when the picture was taken and saw the picture taken or that they took the photograph and can place a time on it, because the time in this case is critical and you [have] no evidence as to when it was taken."

The scope of our review of the judge's decision is solely to determine whether the decision constituted an abuse of discretion. *See State v. Young,* 103 N.M. 313, 706 P.2d 855 (Ct.App.1985). We find no abuse of discretion here. The exhibit was admitted

conditionally, contingent upon defendant's establishing a proper foundation for the exhibit. *See* SCRA 1986, 11–104(B) (court may admit evidence subject to the introduction of evidence necessary to fulfill the condition). *See also Thomas v. Burlington N. R.R.,* 203 Neb. 507, 279 N.W.2d 369, 372 (1979) ("photograph is admissible if it is relevant and shown to be a true and correct representation of the place or subject it purports to depict at a time pertinent to the inquiry"). Here, the trial court could properly find that the photograph was not self-authenticating and that defendant's cross-examination of the victim and his mother did not adequately establish a foundation for the admission of the exhibit. *See State v. Henderson,* 100 N.M. 260, 669 P.2d 736 (Ct.App.1983).

Also supporting our determination that there was no abuse of discretion is the fact that the court did not strike the victim's testimony regarding the photograph. Thus, a witness adverse to defendant admitted before the jury the essential contents of the photograph. Because of that disclosure of the substance of the photograph, the court could reasonably decide that admission of the photograph itself would serve mainly to emphasize the photograph and feed unwarranted speculation.

b. *Scope of cross-examination permitted if defendant gives authentication testimony*

After the trial court's ruling on admission of the photograph, defendant sought to testify regarding the date and circumstances of the taking of the photograph. Defendant contended that he should be permitted to testify without being subject to cross-examination on any matter except credibility. The trial court advised defendant that if he testified, he would be subject to cross-examination on any matter relevant to the trial. Defendant elected not to take the stand.

Defendant challenges the trial court's ruling on what the scope of cross-examination would be if he testified.[1] He relies on

---

1. The state has not argued that by choosing not to testify, defendant failed to preserve the issue.

two rules of evidence, SCRA 1986, 11–104(D) and 11–608(B)(2). Rule 11–104 states:

**Preliminary questions.**

A. **Questions of admissibility generally.** Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge, subject to the provisions of Paragraph B. In making his determination he is not bound by the Rules of Evidence except those with respect to privileges.

B. **Relevancy conditioned on fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

C. **Hearing of jury.** Hearings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury. Hearings on other preliminary matters shall be so conducted when the interests of justice require.

D. **Testimony by accused.** *The accused does not, by testifying upon a preliminary matter, subject himself to cross-examination as to other issues in the case.*

E. **Weight and credibility.** This rule does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility. [Emphasis added.]

Rule 11–608(B) contains the provision:

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

We reject defendant's reading of both provisions.

 We first summarize our analysis of Rule 11–104(D) and then elaborate. Rule 11–104(D) restricts cross-examination of an accused who testifies to a "prelimi-

nary matter." We construe "preliminary matters" to refer to evidentiary issues that are decided by the judge. Testimony presented to the jury for its consideration is not testimony "upon a preliminary matter." Rule 11–104(D) does not apply unless the testimony relates solely to a preliminary matter. Sometimes, as in this case, testimony relating to a preliminary matter is irrelevant unless it is also presented to the jury. That is, even if the testimony elicits a favorable ruling on the preliminary matter, the ruling on the preliminary matter can stand only if the testimony is also presented to the jury. In that circumstance the testimony is not solely upon a preliminary matter and Rule 11–104(D) does not control.

Our interpretation of "preliminary matter" is the natural construction of the language. In what sense can some trial matters be considered "preliminary" to others? The obvious line of demarcation in the context of the rules of evidence is between the presentation of evidence to the jury (the principal matter) and proceedings to determine what evidence is to be presented to the jury (preliminary matters). A typical preliminary matter is the constitutionality of the seizure of evidence, which is usually decided at a pretrial hearing on the admissibility of the evidence in a criminal prosecution; other preliminary matters are often decided at the time of trial.

Our interpretation of "preliminary matter" is compelled not only by the common meaning of the word "preliminary" but also by the usage of the term in the rule. Paragraph A of Rule 11–104 restricts the meaning of "preliminary questions" (a term used interchangeably with "preliminary matter" in Rule 11–104) to those evidentiary issues to be decided by the judge. The second sentence of paragraph C implies that preliminary matters are matters that the jury need not necessarily hear.

In addition, the advisory committee's note to paragraph d of Federal Rule of Evidence 104, which is essentially identical to our Rule 11–104, states, "The rule does not address itself to questions of the subse-

*See Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

quent use of testimony given by an accused at a hearing on a preliminary matter." The statement does not make sense if the accused's testimony is before the jury in the first instance.

Finally, our interpretation of "preliminary matter" in Rule 11–104(D) reflects sound policy considerations. When the trial judge is disposing of the narrow issue of whether certain evidence should be admitted, there is no need to inquire into other issues in the case, so the defendant should be permitted to limit his or her testimony accordingly.

In other words, all that Rule 11–104(D) says is that when the defendant's testimony is limited to the purpose of assisting the judge in determining whether evidence should be admissible, the defendant is not subject to cross-examination on other issues. The problem for defendant here is that his testimony authenticating the photograph could not properly be limited to a preliminary proceeding at which the trial judge determined the admissibility of the photograph. His authenticating testimony would also need to be offered to the jury on the issue of guilt or innocence, which is hardly a preliminary matter. The rules do not provide (at least absent a stipulation of the parties) for the trial judge to make a determination that an exhibit has been properly authenticated and then admit the exhibit into evidence without presenting the authenticating testimony to the jury. Because authentication is a "condition of fact," upon the fulfillment of which the relevancy of evidence depends, paragraphs A and B of Rule 11–104 require that once the trial judge finds that the evidence is sufficient to establish authenticity, that evidence is to be presented to the jury for its consideration. Unless evidence necessary for authentication of an exhibit is presented to the jury, the exhibit is inadmissible. Commenting on Federal Rule of Evidence 104, the advisory committee's note states:

If preliminary questions of conditional relevancy were determined solely by the judge, as provided in subdivision (a), the functioning of the jury as a trier of fact would be greatly restricted and in some

cases virtually destroyed. These are appropriate questions for juries. Accepted treatment, as provided in the rule, is consistent with that given fact questions generally. The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not established, the issue is for them. *If the evidence is not such as to allow a finding, the judge withdraws the matter from their consideration.* [Emphasis added.] *See Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (judge determines only whether evidence is sufficient that jury could make the finding necessary for admissibility).

Consequently, defendant's testimony authenticating the photograph would be irrelevant to the court's determination of admissibility under Rule 11–104(A) unless defendant provided the same testimony before the jury. Yet once the testimony is presented to the jury as admissible evidence, it is no longer solely "upon a preliminary matter" within the meaning of Rule 11–104(D). The limitations on cross-examination imposed by Rule 11–104(D) would not apply.

■ As for defendant's reliance on Rule 11–608(B), his construction of the rule is the exact opposite of its actual meaning. He suggests that the provision restricts permissible cross-examination to matters of credibility. But Rule 11–608(B) does not state that cross-examination on matters of credibility cannot violate a defendant's privilege against self-incrimination. *See* Fed.R.Evid. 608 advisory committee's note. On the contrary, the rule provides that a witness, including the accused, may invoke the privilege against self-incrimination when questioned solely on matters of credibility. For example, if a defendant were asked on cross-examination about the commission of a prior fraud, the defendant could claim the privilege against self-incrimination if the sole relevance of the pri-

or fraud would be to impeach the defendant's credibility.

We are not saying that if a defendant testifies before the jury on one issue, he is always subject to cross-examination on all issues in the trial. *See McCormick on Evidence* § 132 (E. Cleary 3d ed.1984). In general, "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." SCRA 1986, 11–611(B). When a defendant testifies to authenticate an object, however, the "subject matter" of the testimony is not necessarily solely the authenticity of the object. If it were, then Rule 11–104(D) would be superfluous, since Rule 11–611(B) would achieve the same result. The scope of the subject matter of direct examination is determined by the trial court's view of what cross-examination is appropriate to ensure a fair presentation of the evidence. *See Brown v. United States*, 356 U.S. 148, 154, 78 S.Ct. 622, 626, 2 L.Ed.2d 589 (1958) ('if [a defendant in a criminal case] takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any other witness'). We review such a decision by the trial court under an abuse-of-discretion standard. *See United States v. Panza*, 612 F.2d 432, 437 (9th Cir.1979), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980) and *sub nom. Tates v. United States*, 447 U.S. 926, 100 S.Ct. 3020, 65 L.Ed.2d 1118 (1980). We cannot say that the trial court abused its discretion in advising defendant that his proposed testimony regarding the photograph would open him up to cross-examination on the entire subject matter of the three charges remaining against him. "[I]f the facts testified to by a defendant on direct examination amount, by inference, to a denial of the charge, he may then be cross-examined with respect to any matter tending to prove his guilt." *People v. James*, 56 Cal.App.3d 876, 888, 128 Cal.Rptr. 733, 741 (1976) (emphasis deleted). In particular, alibi testimony by the defendant opens the defendant up to full cross-examination regarding the offense. *See id.; State v. Williams*, 519 S.W.2d 576 (Mo.Ct.App.1975).

### 3. TESTIMONY OF JOHN HALVERSON

Defendant raises objections to the testimony of John Halverson. We are not certain precisely what objections are being raised on appeal. The heading for this point in defendant's brief-in-chief is: "The trial court erred in permitting testimony about defendant's alleged misconduct subsequent to the date of the charges against him, thus, denying defendant a fair trial." This contention is based on an incorrect premise. The conduct about which Halverson testified occurred in January of 1988. Although the conduct for which defendant was convicted occurred in December 1985, the criminal information upon which defendant was tried also contained a count alleging criminal sexual penetration in June 1988. Thus the testimony did not concern conduct subsequent to the charges against defendant.

In the discussion under this heading, however, defendant's brief-in-chief raises several other objections to Halverson's testimony. First, he contends that the testimony should have been excluded under SCRA 1986, 11–404. The challenged testimony by Halverson related to a Boy Scout outing at which defendant, contrary to Boy Scout practice, shared a tent with the victim until Halverson advised him that such behavior was not appropriate for a Boy Scout camp-out. At trial, defense counsel objected to Halverson's testimony on the ground that it violated Rule 11–404 because it was evidence of character to prove conduct in conformity therewith.

This objection was properly rejected. New Mexico recognizes that the general prohibition against evidence of other misconduct does not bar testimony concerning the relationship between the accused and a victim of sexual misconduct if the testimony is offered to show a lewd and lascivious disposition of the defendant toward the victim. *See State v. Mankiller*, 104 N.M. 461, 722 P.2d 1183 (Ct.App.1986); *State v. Minns*, 80 N.M. 269, 454 P.2d 355 (Ct.App. 1969).

The trial court might have excluded the evidence under SCRA 1986, 11–403, which permits the exclusion of relevant evidence if the probative value is substantially outweighed by the danger of unfair prejudice. Halverson's testimony was not particularly probative. Yet at trial defense counsel did not present that argument to the court. In any case, we believe that it was within the discretion of the trial court to find that the probative value of the evidence exceeded the danger of unfair prejudice.

■ Second, defendant contends, as he did at trial, that Halverson's testimony violated the hearsay rule. This contention appears to relate to Halverson's testimony concerning statements by defendant, but such statements are not hearsay. *See* SCRA 1986, 11–801(D)(2)(a).

Finally, defendant's brief-in-chief states, without further elaboration, "The alleged prior act of misconduct was not disclosed to defendant prior to trial." We do not understand the basis of this contention. At trial, before Halverson's testimony, defense counsel commented that he had not previously been advised of any admission made by defendant to Halverson. Halverson was then called to testify on voir dire out of the presence of the jury. After that testimony defense counsel made no further mention of being unfairly surprised. On this record we have no reason to believe that there was any improper failure of the state to provide required discovery, or that defendant was prejudiced by any delay in disclosure.

In sum, we reject defendant's challenges to Halverson's testimony.

## 4. ALIBI INSTRUCTION

■ Defendant contends that under the special circumstances of this case he was entitled to an alibi instruction. Yet he requested no such instruction at trial. Nor are we inclined to find that failure to give an alibi instruction in this case was fundamental error. The use note to the Uniform Jury Instruction on alibi, SCRA 1986, 14–5150, states that the instruction should not be given. *See State v. Robinson*, 94 N.M.

693, 616 P.2d 406 (1980) (approving use note).

## 5. LESSER INCLUDED OFFENSE

■ Defendant contends that CDM is a lesser-included offense of CSPM and that therefore he should not have been sentenced on the lesser offense. Even if defendant's argument were correct in the abstract, it has no application in this case. The charge of CDM against defendant had nothing to do with the elements of CSPM. In its instruction to the jury on the elements of CDM, the court stated as the first element of the crime: "The defendant served alcohol to or allowed alcohol to be consumed by [the victim] without his parents' approval[.]" Because the conduct forming the basis for defendant's CDM conviction was necessarily distinct from the conduct forming the basis for his CSPM conviction, the court acted properly in sentencing defendant on both convictions. *See Swafford v. New Mexico*, 112 N.M. 3, 810 P.2d 1223 (1991); *State v. Bachicha*, 111 N.M. 601, 808 P.2d 51 (Ct.App.1991).

## 6. INEFFECTIVE ASSISTANCE OF COUNSEL

■ Defendant, listing numerous actions and failures to act of defense counsel at trial, contends that he was denied effective assistance of counsel. The gist of this contention appears to be that trial counsel should have adopted the same approach as defendant's appellate counsel—raising every possible objection. Although this approach appears to have substantial support among competent counsel, another school of thought believes that representation of a client is more effective if it is focused on a few matters.

Before discussing the alleged failures of defense counsel raised on appeal, we note that we have reviewed enough of the trial record to see that defense counsel did not simply lie back and let the state run over him. Counsel actively pursued rational defense strategy and conducted reasonable cross-examination.

We could properly dispose of defendant's claim of ineffective assistance of counsel

on the ground that defendant has failed to provide sufficient facts from the record for us to adequately review the contentions, has failed to provide supporting authority for the contention that defense counsel's conduct was below the standard of care, and has failed to explain how defendant's defense was prejudiced by the alleged lapses. Nevertheless, we address defendant's contentions. Although asserting that the list is not exhaustive, defendant's brief lists sixteen lapses, many of which contain multiple examples. We summarize each listed contention and then discuss it.

(1) *Defense counsel failed to object to the trial court's opening remark to the panel that defendant was charged with engaging in homosexual acts.* Such failure is understandable, because the court's statement was true and was appropriate in voir dire as a means of determining whether any potential juror would be improperly influenced by the nature of the alleged misconduct.

(2) *Defense counsel failed*

a. *to object when the prosecutor stated that the defendant was charged with homosexual acts.* Again, such an objection would have been inappropriate.

b. *to object to the allegedly argumentive nature of the prosecutor's voir dire.* Our review of the record reflects no such failure.

(3) *Defense counsel failed to object to the prosecutor's assertions in opening statement that the complainant had a long-standing sexual relationship with defendant and that defendant was charged with inserting his penis into the victim's mouth.* Competent counsel need not have objected. The claim that there had been a long-standing sexual relationship was supported by evidence, including defendant's exhibit B, an evaluation of victim by Dr. C.C. Fenzi. As for the other statement by the prosecutor, it is not unusual for opposing counsel to relish such a misstatement of fact in opening statement, because such misstatements can undermine the credibility of the attorney. Objection is not necessarily the best means of exploiting the prosecutor's error.

(4) *Defense counsel failed to object when the prosecutor allegedly engaged in improper argument in opening statement.* Defense counsel did object twice. Defendant's brief provides only one quotation of allegedly improper argument to which no objection was made. In that quoted statement the prosecutor referred to evidence that was ultimately not admitted at the trial, but the reference to the evidence was sufficiently vague that trial counsel could have well decided that an objection would simply draw attention to the matter. Our review of the prosecutor's opening statement does not reveal ineffective assistance of defense counsel in not objecting more than he did.

(5) *Defense counsel improperly stated that he would prove defendant's alibi beyond a reasonable doubt.* Insofar as defense counsel's comment might suggest to the jury that defendant had the burden of proving alibi beyond a reasonable doubt, the misimpression was repeatedly corrected, both by the court and by defense counsel during closing argument.

(6) *Defense counsel failed to conduct adequate cross-examination of the state's witnesses.* The brief does not point to any specific avenues of inquiry that should have been pursued. In any case, the extent of cross-examination is very much a matter of trial tactics and what we have reviewed of defense counsel's cross-examination appears sufficiently vigorous.

(7) *Defense counsel failed to object to numerous improper questions during direct examination of the victim.* Defendant's brief quotes fourteen examples. Many of the examples do not appear to be at all objectionable. Insofar as some of the questions were leading, the trial court has considerable discretion in permitting leading questions. *See* SCRA 1986, 11–611. If the victim appeared particularly timid or embarrassed, defense counsel may well have decided that objecting would serve no useful purpose.

(8) *Defense counsel failed to object to certain testimony by witness Kent Perry.*

Defense counsel objected vigorously. We see no incompetence.

(9) *Defense counsel failed to object to allegedly leading and hearsay questions of the victim's mother.* Defendant's brief cites no specific examples. Our review of the testimony reveals no incompetence in defense counsel's failure to object.

(10) *Defense counsel failed to request and remind the trial court to give a cautionary instruction to the jury.* Because the brief does not describe what the cautionary instruction was to be, it is impossible for us to consider this contention. In any event, competent counsel often do not seek cautionary instructions because they can emphasize matters that should be disregarded.

(11) *Defense counsel failed*

a. *to object to numerous improper questions of Detective Burkhart.* The only specific example provided in defendant's brief is that Burkhart was asked to state his impression of defendant at the time defendant gave a statement. The detective's response—that defendant was talkative—was admissible lay opinion under SCRA 1986, 11–701.

b. *to move the admission of defendant's written statement to the detective, which contained exculpatory matter—defendant's denial of the charges.* Because defendant's denial came in through the detective's testimony, we find the failure to offer the written statement (which contained damaging admissions, such as defendant's acknowledgment that he had occasionally shared a bed with the victim) to be a matter of trial tactics.

(12) *Defense counsel failed to object when the prosecutor asked Detective Burkhart if the victim told him that the sexual molestation had gone on for years.* Defense counsel's cross-examination suggests that failure to object was a rational tactical decision. Defense counsel appeared to be attempting to convey that the victim's allegations were not credible because he had waited so long to report them.

(13) *Defense counsel failed to object to certain testimony by Dr. Gray.* The only specific provided by defendant's brief is that Dr. Gray was permitted to state her medical opinions as a possibility rather than upon reasonable medical probability. It appears, however, that the purpose of her testimony was to show that observations of another doctor, whose report had already been admitted into evidence, were not inconsistent with the victim's having been subjected to CSPM. In that context the medical opinion need not be stated as a matter of reasonable medical probability.

(14) *Defense counsel failed to object to the prosecutor's statements regarding Dr. Fenzi and Halverson.* We disagree with defendant's characterization of these comments as comments on the credibility or evidentiary value of the witnesses.

(15) *Defense counsel failed to object to allegedly leading and speculative questions asked of Halverson.* Having reviewed Halverson's testimony, we fail to see any questions to which competent counsel was compelled to make such objections. Objecting to vague testimony creates the risk that the witness will then provide more specific incriminatory testimony.

(16) *Defense counsel failed to object to various comments made by the prosecutor in closing.* The allegedly improper comments appear to have been proper comments on the evidence.

In summary, the claim of ineffective assistance of counsel borders on the frivolous.

## 7. ALLEGED PROSECUTORIAL AND JUDICIAL MISCONDUCT

Defendant claims that reversal is required because of a number of instances of prosecutorial or judicial misconduct. Many of the instances about which defendant complains have already been considered in the prior section, because defendant there contended that defense counsel's failure to object at trial to the conduct constituted ineffective assistance of counsel. We need not repeat our discussion of those matters.

As for additional matters raised by defendant under this heading, suffice it to say that we have carefully reviewed defen-

dant's briefs and find that the briefs do not make an adequate showing of improper conduct by either the trial court or the prosecutor.

## 8. INDEPENDENT PSYCHOLOGICAL EXAMINATION

The trial court ordered a psychological examination of defendant for purposes of sentencing. After reviewing the evaluation prepared by the Western New Mexico Correctional Center (WNMCC), defense counsel moved to obtain an independent psychological evaluation. The court took the motion under advisement until the close of testimony at the sentencing hearing. The court then rejected the motion, saying: "I don't know what is to be gained from further evaluation, so long as Mr. Delgado maintains he did not commit the offense as charged. I don't know what the matter in way of mitigation could come from a further forensic evaluation."

■ Defendant claims that denial of his motion violated his constitutional right to equal protection because a wealthier defendant could have afforded to pay for an independent psychological evaluation. We reject defendant's contention. The right to equal protection does not mean that "a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy," *Ake v. Oklahoma,* 470 U.S. 68, 77, 105 S.Ct. 1087, 1093, 84 L.Ed.2d 53 (1985). What is required is that defendants have "an adequate opportunity to present their claims fairly within the adversary system," *Ross v. Moffitt,* 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974); that is, defendants are entitled to the "basic tools of an adequate defense." *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971).

■ In this case the trial court's denial of the motion was reasonable. The trial court's sentencing decision was founded on the recommendation of the WNMCC that defendant be incarcerated for a full prison term. As stated in a letter from the warden to the trial court:

This recommendation is based on the following: He did not admit his guilt to the current offenses, and claimed the victim made the allegations as an act of vengence [sic], and that the jury was swayed by the District Attorney. Mr. Delgado has stated that he does not feel he needs a sex offender's treatment program, as he maintains he is not a sex offender. Consequently, without treatment, there appears to be cause for concern as to the safety of the community should Mr. Delgado be released under probation supervision. It is further noted that the Sex Offender's Treatment Program at Las Vegas, New Mexico, will not accept clients who do not admit to having committed a deviant sex act, and the severity of the offense and impact upon the victim has been considered.

Given the basis of the recommendation, the trial court acted within its proper discretion in deciding that a further psychological examination would serve no useful purpose.

## 9. SUFFICIENCY OF THE EVIDENCE

■ We review the evidence in light most favorable to the state and resolve all conflicts in the evidence and indulge all permissible inferences in favor of the verdict. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). The victim testified to the two acts of CSPM and that defendant gave him a Bacardi and coke on the alleged date. The victim's mother testified that she did not give defendant permission to serve alcohol to the victim. Such testimony is sufficient to support the verdict. *See State v. Newman,* 109 N.M. 263, 784 P.2d 1006 (Ct.App.1989). We need not recite the corroborating evidence.

## 10. DEFECTIVE RECORD

■ Defendant states that the inaudibility of tapes and the failure to record bench conferences make it impossible to determine whether his issues were adequately preserved. Yet a verbatim transcript of record is not necessary to decide issues raised on appeal. *See State v. Fish,* 101 N.M. 329, 681 P.2d 1106 (1984). Defendant makes no specific claim of prejudice. Defendant does not contend that the record

fails to report prejudicial events and thereby prevents him from raising meritorious issues on appeal. He asserts only that omissions in the record foreclose him from showing that he preserved certain issues in the trial court. This court, however, has addressed virtually all of defendant's claims on the merits. Insofar as our discussion has noted any failure of defense counsel to preserve an issue (such as the failure to submit an alibi instruction or to object to Halverson's testimony as irrelevant), defendant has not contended that a more complete record would establish that the matters were preserved.

## 11. CONCLUSION

For the above reasons, we affirm defendant's convictions.

IT IS SO ORDERED.

ALARID, C.J., and DONNELLY, J., concur.